# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ESTHEE VAN STADEN**                          **CIVIL ACTION**

**VERSUS**                                     **NO: 09-5827**

**EUGENE ST. MARTIN, M.D., IN**                **SECTION: "B"(2)**
**HIS OFFICIAL CAPACITY AS**
**CHAIRMAN OF THE LOUISIANA**
**STATE BOARD OF PRACTICAL**
**NURSE EXAMINERS**

## ORDER AND REASONS

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment and
for Permanent Injunction (Rec. Doc. No. 18) is **DENIED;** Defendant's
Motion for Summary Judgment (Rec. Doc. No. 24) is **GRANTED;**
Defendant's Motion to Dismiss (Rec. Doc. No. 17) is **DISMISSED** as
moot; Plaintiff's Motion to Strike Defendant's opposition to
Plaintiff's Motion for Summary Judgment and Defendant's replacement
statement of contested material facts in opposition to plaintiff's
Motion (Rec. Doc. No. 31) is **DENIED.**

Plaintiff, Esthee Van Staden, a South African citizen, with
non-permanent resident alien status, has been authorized to work in
the United States and has a pending I-485, Application to adjust to
Permanent Resident Status.[1] In December 2006, plaintiff graduated
at the top of her class from North Harris Montgomery Community
College District, an accredited nursing school in Texas. She passed

---

[1] An opposite result should occur here if Plaintiff receives approval for
Permanent Resident Status.

the NCLEX-PN exam in Texas and received her Texas Vocational Nursing License in January 2007. Plaintiff moved from Texas to Louisiana in February 2007. She applied to the Louisiana State Board for Practical Nurses for licensure and was denied. Her Texas license is current and in good standing.

Plaintiff applied for licensure to the Louisiana State Board of Practical Nurse Examiners. Her application documents were returned to her, and she was told that she could file a Form N-300 and reapply. Plaintiff contacted Claire Doody Glaviano, Executive Director of the Louisiana State Board of Practical Nurse Examiners. Ms. Glaviano petitioned the Attorney General's Office for an opinion related to the validity, *vel non*, of citizenship requirements for practical nursing licensure. The Attorney General's Office instructed Ms. Glaviano to continue to enforce the existing state law.

Plaintiff intends to stay in the United States permanently. However, she cannot file a Form N-300 until she becomes a permanent resident. Plaintiff has applied for permanent resident status and is waiting for the paperwork to be processed, which could take years.

Plaintiff brought this lawsuit against Defendant, Eugene St. Martin, M.D., in his official capacity as Chairman of the Louisiana State Board of Practical Nurse Examiners, from denying licensure to qualified applicants, including her, based solely on the LSA- R.S.

37:970. That state law prohibits the grant of practical nursing licensure to non-citizens, regardless of their work authorization, immigrant, or permanent resident alien status, unless they have filed an intent to become citizens, which plaintiff does not yet qualify to do. Plaintiff brings her action under 42 U.S.C. Sec. 1983 to vindicate her rights, *inter alia*, arising under the Supremacy Clause and the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff's complaint also seeks declaratory, prohibitory, and mandatory relief. (See Plaintiff's Complaint at Page 1).

Additionally, the Plaintiff's complaint alleges five counts: Equal protection, due process, supremacy clause, right to travel, and Dormant Commerce Clause.

## A. Motion To Dismiss Standard

When reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) (internal

quotation marks omitted). The Supreme Court in *Iqbal* explained that *Twombly* promulgated a "two-pronged approach" to determine whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1950. First, courts must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Legal conclusions "must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

Upon identifying the well-pleaded factual allegations, courts then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

**B. Motion for Summary Judgment Standard**

When determining if summary judgment is appropriate, the court views evidence in the light most favorable to the non-moving party. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). To grant summary judgment, "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. If the moving party does not meet its burden of showing an absence of genuine issue of material fact, the motion must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party moving for summary judgment manages to show the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). If only one conclusion can be reasonably inferred from such evidence, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). It has also been established that "the party opposing the motion for summary judgment bears the burden of responding only after the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact." *See Celotex Corp.*, 477 U.S. at 322.

The Supreme Court state that:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.*

**C. Plaintiff's Immigration Status**

Plaintiff makes two contentions that are odds with each other in memoranda to the Court. First, Plaintiff argues that she is "a legal permanent resident of the United States and have lived here for the past 8+ years." (Rec. Doc. No. 36). Next Plaintiff avers that she has "not yet been admitted for permanent residence, which means a green card, but [she] will be based on [her] current application. It is just a matter of time." Plaintiff seems to be arguing that she should be treated as a legal permanent resident, however, the Fifth Circuit law and precedent do not agree.

In *United States v. Lucio*, 428 F.3d 519 (5th Cir.2005), the Fifth Circuit held that a formerly illegal alien who applies for adjustment of status is not in lawful status merely because he is allowed to remain in the United States while his application is pending. The court concluded that "the submission of an application does not connote that the alien's immigration status has changed, as the very real possibility exists that the INS will deny the alien's application altogether." Id. at 525.

Here, while the plaintiff is not an illegal alien who has applied for an adjustment of status, the logic of the case still applies. The submission of an application without complete approval does not change plaintiff's legal status from non-

permanent resident alien to permanent resident alien.[2]

The challenged statute at issue is Louisiana Revised Statute
Section 37:970 which states:

> An applicant for a license to practice as a
> practical nurse shall:(1) Be of good moral
> character;(2) Be a citizen of the United
> States or have taken out his first citizenship
> papers;(3) Have successfully completed the
> course in an accredited school for the
> training of practical nurses.

Plaintiff admits she is not a United States citizen and that
the first citizenship papers are taken by filing immigration Form
N-300 *Declaration of Intent to Become a U.S. Citizen*, for which
plaintiff is not yet eligible. (Plaintiff's Complaint at pp. 2-3).

Thus, within the matrix of immigration laws and regulations,
Plaintiff is a non-permanent resident alien, lawfully residing

---

[2] Additionally, for the purposes of jurisdiction, an alien admitted to
the United States for permanent residence shall be deemed a citizen of the
State in which such alien is domiciled. 28 U.S.C. § 1332(a). When determining
whether an individual has been admitted to the United States for permanent
residence such that he or she is within the scope of this provision, courts
look to the alien litigant's official immigration status. *Foy v. Schantz,
Schatzman & Aaronson*, 108 F.3d 1347, 1348 (11th Cir.1997); *see also Karazanos
v. Madison Two Associates*, 147 F.3d 624, 627-28 (7th Cir.1998); *Funygin v.
Yukos Oil Co.*, 2005 WL 1840147, at *2 (S.D.Tex. July 28, 2005) (finding that
Congress did not intend for federal courts to engage in a fact-intensive
analysis to determine where an alien intended to reside, and instead looking
only to the alien's official immigration status).
    Here, while jurisdiction is not at issue, the same process in
determining whether Esthee Van Staden is a permanent resident applies.  The
Plaintiff's official immigration status is non-permanent resident alien.
    Uncontested here is Plaintiff's authorization to work in the United
States.  For such authorization, an alien must possess "a valid social
security account number card," 8 U.S.C §1324a(b)(C)(i), or "other
documentation evidencing authorization of employment in the United States
which the Attorney General finds, by regulation, to be acceptable for purposes
of this section," §1324a(b)(C)(ii). *Hoffman Plastic Compounds, Inc. v. NLRB*,
535 U.S. 137, 147 (2002) (Congress authorized to create a comprehensive scheme
to regulate the employment of aliens).

within the United States.

## D. Claim I - Equal Protection

In Count 1 of the complaint, Plaintiff alleges:

> LSA-R.S. 37:970(2) creates an arbitrary
> discrimination among potential applicants for
> the practical nursing licensure based solely
> on whether a person is a United States Citizen
> or not. As such, the statute which is
> enforced by the defendant, violates the Equal
> Protection Clause of the Fourteenth Amendment
> to the United States constitution and is
> subject to strict scrutiny.

Plaintiff argues that classification based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. *Graham,* 403 U.S. at 372 (1971). Plaintiff maintains that classifications based on the difference between citizenship and at least permanent resident alienage/non-citizenship are prohibited, so that such a distinction is subject to strict scrutiny.

Under a strict, intermediate, or rational basis standard, Plaintiff contends LSA R.S. 37:970 cannot be upheld. She argues that the relationship between the stated basis for the law and the action taken is not substantial or significant, nor does it constitute an exceedingly persuasive justification for a blanket exclusion of all aliens from licensure as practical nurses in

Louisiana. Plaintiff contends that there is no legitimate state interest in denying licensure as practical nurses to qualified applicants based solely on citizenship.

Based however on the majority's opinion in *LeClerc v. Webb,* 419 F.3d 405 (5th Cir. 2005), Plaintiff's equal protection claim must survive a rational basis standard.

Law and Analysis:

LSA-R.S. 37:970 oversees the qualifications of practical nurse applicants who apply for a license in the State of Louisiana. (Rec. Doc. No. 18 at 9). Section (1) of the statute states that an applicant must "be of good moral character." (Rec. Doc. No. 18 at 9, n. 32). Section (2) of the statute states that every applicant must **"be a citizen of the United States or have taken out his first citizenship papers."** (Rec. Doc. No. 18 at 9)(Emphasis added). The "first citizenship papers" are initiated by filing the immigration Form N-300 Declaration of Intent to Become a U.S. Citizen. (Rec. Doc. No. 18 at 9). Section (3) of the statute requires that applicants "have successfully completed the course in an accredited school for the training of practical nurses." (Rec. Doc. No. 18 at 9, n. 32). This statute was enacted in 1954 and amended in 1968.

In *LeClerc v. Webb,* 419 F.3d 405 (5th Cir. 2005), the plaintiffs challenged a similar rule as applied to aliens seeking a license to practice law in the State of Louisiana. *LeClerc*

plaintiffs attacked Louisiana Supreme Court Rule XVII, Section 3(B), which rendered the plaintiffs, nonimmigrant aliens, ineligible to sit for the Louisiana Bar. The plaintiffs argued that "Section 3(B) violated their rights under the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, and the Supremacy Clause of Art. VI, cl. 2." 419, F.3d at 414-15.

In *LeClerc*, the plaintiffs contended, as Plaintiff does here, that the challenged rule was subject to strict scrutiny. The panel majority held, however, that "based on the aggregate factual and legal distinctions between resident aliens and nonimmigrant aliens, we conclude that although aliens are a suspect class in general, they are not homogeneous and precedent does not support the proposition that nonimmigrant aliens are a suspect class entitled to have state legislative classifications concerning them subjected to strict scrutiny." *Id.* at 419. The Fifth Circuit went on to state that "thus far, the Supreme Court has reviewed with strict scrutiny only state laws affecting permanent resident aliens..." *citing Regents of University of California v. Bakke*, 438 U.S. 265, 357 (1978). Additionally, the Fifth Circuit noted that the development of this jurisprudence is consistent with the Court's fundamental rationale for applying strict scrutiny review exclusively to resident aliens. *Leclerc*, 419 F.3d at 417. "Nonimmigrant aliens' status is far more constricted than that of

resident aliens.  Nonimmigrant aliens are admitted to the United

States only for the duration of their status..." *Id.* at 418.

The Fifth Circuit concluded that rational basis review must be

the appropriate standard for evaluating state law classifications

affecting nonimmigrant aliens.

The *LeClerc* opinion explained:

> A legislature must have substantial latitude
> to establish classifications that roughly
> approximate the nature of the problem
> perceived, that accommodate competing concerns
> both public and private, and that account for
> limitations on the practical ability of the
> State to remedy every ill.  In applying the
> Equal Protection Clause to most forms of state
> action, we thus seek only the assurance that
> the classification at issue bears some fair
> relationship to a legitimate public purpose.

Under traditional rational basis analysis, a state law

classification that "neither burdens a fundamental right nor

targets a suspect class" will be upheld "so long as it bears a

rational relation to some legitimate end." *Vacco v. Quill*, 521

U.S. 793, 99 (1997).

Here, LSA-R.S. 37:970, the Louisiana statute governing

applications for licensure of Licensed Practical Nurses ("LPNs") in

the State of Louisiana, must be sustained if it can be said to

advance a legitimate governmental interest, even if the law seems

unwise or works to the disadvantage of a particular group, or if

the rationale for it seems tenuous.  Arguably, the Louisiana

Legislature concluded that the temporary status of nonimmigrant

aliens could impede the Board's regulatory and disciplinary efforts. Conditions that could frustrate the administration of Louisiana's LPN licensing scheme are certainly within the mainstream of police power regulation. While arguably so, LSA-R.S. 37:970 is "roughly approximate" to the concerns identified by Louisiana, given "limitations on the practical ability of the state to remedy every ill." *Leclerc v. Webb,* 419 F.3d at 422; *citing Plyer,* 457 U.S. at 216. As such, Plaintiff's Equal Protection Claim fails by the application of *Leclerc*'s majority holdings.

We are compelled by circuit precedent here, despite serious reservations about the state's professed rational basis. Given the highly mobile and electronically advanced society that we live in, U.S. citizens and legal aliens of all classifications, could equally thwart state regulatory action by exiting the country or finding ways to hide within it. There is no record evidence that any particular group is more or less advantaged in that regards over another. Further, Louisiana's rationale, fear of regulatory enforcement against legal aliens seeking permanent status, is contradicted by our neighbor state Texas' ability to allow licensure of qualified persons like Plaintiff. One would think that given the need for professional health care, a state as challenged as ours by poverty, poor education, natural and man-made disasters of monumental record-breaking proportions would want to find more ways to obtain the providers for that care. Moreover, as

illustrated by the dissenting opinion in *LeClerc*, "...a nonimmigrant alien who lives in the United States is but one class of resident alien...as (that term) is used in the Supreme Court's jurisprudence, as simply indicating that the alien (lawfully) resides in the United States." The instant policy does not exclude citizens or permanent resident immigrants who temporarily reside in Louisiana; it only excludes resident aliens, lawfully here, who have not been declared permanent residents yet. Under a strict scrutiny analysis of the policy at issue, Plaintiff would prevail; but for noted circuit precedent, the overly restrictive policy here would also fail rationale basis standard review.

**Claim II - Due Process**

In Count II of the complaint, plaintiff contends:

> "...the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that the standards must have a rational connection to the applicant's fitness, capacity, or qualifications to be a practical nurse."

In Count II the Plaintiff also contends that the fact that the Plaintiff "is not a citizen" of the United States "has no rational relationship with the fitness or ability or any other qualification for performing the duties of a practical nurse"; and therefore, "the actions of the Louisiana state Board for practical nurses in barring noncitizens from licensure as practical nurses in Louisiana violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, withing the meaning of 42 U.S.C.

13

Section 1983."

Plaintiff maintains that her first application for licensure was returned to her by the Board without any record that it had been filed. According to Plaintiff, after the denial of licensure and the return of her application documents, she contacted Claire Doody Glaviano, Executive Director of the Louisiana State Board of Practical Nurse Examiners by email of June 19, 2008; that email contained a summary of her contentions. On May 12, 2009, Ms. Glaviano acknowledged receipt of Plaintiff's email but was unable to locate any record of the application. Ms. Glaviano stated the she was exploring legislation that would remove the citizenship requirement and that she would be in contact with the Board's attorney.

Defendant responds that the plaintiff has not availed herself of the remedies available to her under the Louisiana Administrative Procedure Act, LSA-R.S. 49:950, *et seq.* and/or the Louisiana Administrative Code, LAC Title 46, Part XLVII, "Subpart 1. Practical nurses," Section 101, *et seq.*

Law and Analysis:

The Louisiana Administrative Procedure Act, LSA-R.S. Title 49, Section 962, in pertinent part, provides:

> Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory orders and rulings as to the applicability of any statutory provision or of any rule or orders of the agency. Declaratory orders and rulings shall have the same status

14

as agency decisions or orders in adjudicated
cases.

La. Rev. Stat. Ann. Section 49:962 (West 2008).
    The Louisiana Adminstrative Code, LAC Title 46, Part XLVII,

Subpart 1. Practical nurses," Chapter 3, section 309, in pertinent

part provides:

A.    The Board on its own motion may move for a declaratory
      order or ruling as to the applicability of any statutory
      provision or of any rule or order of the board.  Any
      interested party may petition the board for a declaratory
      order or ruling as stated above.

L.A.C. Title 46, Section 309.

    The *LeClerc* Plaintiffs also asserted a procedural due process

challenge.  The Fifth Circuit found that procedural due process

rights do not vest in a party who failed to seek a hearing before

filing suit.  *Id.*  Again due to that precedent, procedural due

process rights do not vest in this plaintiff, who also failed to

seek a hearing before filing suit.  We note, however, that the

futility of doing so seems evident in view of above-noted

communications with the Executive Director of the same Board that

would hear her petition.

**Claim III – Supremacy Clause**

    Plaintiff contends that a comprehensive statutory scheme to

govern the treatment of aliens and immigrants in the United States

already exists, as established by Congress. The plaintiff claims

that:

        "...The actions of the Louisiana State Board of
        Practical Nurse Examiners are incompatible with the

comprehensive statutory scheme established by Congress
because such actions impose burdens on aliens that are
not imposed by federal law, and are thus in violation of
the Supremacy Clause of Article VI of the United States
Constitution."

(See Plaintiff's Complaint at Page 7).

Therefore, the plaintiff claims that the Louisiana State
Board for Practical Nurses' actions of disallowing non-citizens to
obtain licenses as nurses in Louisiana violates the Supremacy
Clause of Article VI of the United States Constitution and are
actionable under 42 U.S.C. § 1983. (See Plaintiff's Complaint at
pp. 7-8).

The plaintiffs in *LeClerc* argued that the state rule there
was preempted by the Immigration and Nationality Act ("INA") and
that the state law/rule conflicted with some of the INA's
established and comprehensive provisions. *Id.* The United States
Court of Appeals for the Fifth Circuit disagreed with the
plaintiffs stating that, "[d]espite the federal government's
primacy over the regulation of immigration, not 'every state
enactment which in any way deals with aliens is a regulation and
thus per-se preempted....'" *See id*. at 423. The Court ultimately
concluded that the state policy was an appropriate exercise of
Louisiana's power, stating that, "the Louisiana Supreme Court was
rationally entitled to conclude that the temporary status of
nonimmigrants aliens could impede the Bar's regulatory and
disciplinary efforts." *See id.*

In *Szeto v. La. State Bd. of Dentistry*, 508 F.Supp. 268, 272-73 (E.D. La. 1981), the district court held that regulating employment of aliens is a power traditionally left to the states. *Id.* at 272-73. There, the plaintiff argued that a Louisiana statute, § 37:761 violated the Supremacy Clause by interfering with immigration and naturalization powers granted to Congress. *Id.* at 272. The Supremacy Clause requires that if a state law conflicts with any federal law, it must be invalidated. The court in *Szeto* stated that, "the relevant inquiry here is whether § 37:761(1) regulates a field that Congress alone occupies; such a determination can be reached only if the nature of the regulated subject matter ... permits no other conclusion or if Congress has unmistakably so ordained." *Id.*

While the INA involves the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country, the Supreme Court has previously held that in some cases the congressional concern over the employment of aliens is secondary. *DeCanas v. Bica*, 424 U.S. 351, 356 (1976). The court noted that just because a state statute involves aliens, that does not automatically render it an immigration regulation. *DeCanas* 424 U.S. at 351.

Plaintiff's basis for this claim is that a statutory scheme governing the treatment of aliens exists under 8 U.S.C. § 1101 and the statute implemented by Louisiana State Board of Practical

Nurse Examiners places more burdens on aliens - burdens that are not imposed by federal law. Therefore, plaintiff asserts that since LSA-R.S.37:970 is not in harmony with the Constitution, this state statute violates the Supremacy Clause.

While some state statutes may be rejected because they directly interfere with the goals of federal policy, the Supreme Court in *DeCanas* was quick to note that, "[f]ederal regulation ... should not be deemed preemptive in the absence of persuasive reasons...." *DeCanas* 424 U.S. at 356.

*LeClerc* again allows some points of comparison on this issue. The Fifth Circuit held that a Louisiana statute that prevented a group of nonimmigrant alien students from sitting for the bar did not violate the Supremacy Clause. 419 F.3d at 423-24. The court reasoned that regulating employment was a valid and acceptable exercise of a state's police power. *Id.* The *LeClerc* plaintiffs claimed the state statute violated the INS, but the court disagreed and found that the Supreme Court has acknowledged that "there is no indication that Congress intended to preclude state law in the area of [alien] employment regulation." *Id.* at 424. As stated earlier, the instant case is similar to *LeClerc*. The majority's reasoning in *LeClerc* - that a state employment statute is a reasonable exercise of state powers without persuasive reasons that the policy disagrees with federal law - applies here. *Id.*

In *DeCanas v. Bica*, 424 U.S. 351, 362 (1976), the Supreme Court held that a California Labor Code that prohibited an employer from knowingly employing an alien who cannot obtain lawful residence in the United States did not violate the Supremacy Clause and could therefore be upheld. *See id.* at 362. States possess many police powers as related to employment, including minimum wage, child labor laws, and worker's compensation. *Id.* at 356. The *DeCanas* court reasoned that the Labor Code was enacted to prevent persons who were not entitled to lawful residence from obtaining employment was well within the State's police powers. *Id.* at 356-57. The Code attempted to protect the State's fiscal interest and was directed to combat local evils. *Id.* at 357.

The instant case can be contrasted to *Toll v. Moreno*, 458 U.S. 1, 3 (1982) where a group of nonimmigrant alien students who held "G-4" visas[3] brought claim against the University of Maryland for barring them from receiving in-state status, and thus cheaper tuition. *Id.* at 3. The court stated that the Federal Government has allowed G-4 aliens into the country and permitted them to establish domicile as well as tax exemptions on organizational salaries. *Id.* at 4-5. By a state allowing a university to impose discriminatory fees on students based on their federal immigration

---

[3] G-4 visas are issued to nonimmigrant aliens who are officers or employees of certain international organizations and to members of their immediate families.

status and preventing students from acquiring in-state status, this violates the Supremacy Clause. *Id.* at 17.

The court stated that:

> "The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. Under the Constitution the states are granted no such powers; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states. State laws which impose discriminatory burdens upon the entrance or residence of aliens lawfully within the United States conflict with this constitutionally derived federal power to regulate immigration, and have accordingly been held invalid."

*Id.* at 10.

In *Toll*, the university refused to allow students to obtain in-state status, a right afforded to them by the federal government as G-4 visa holders. *Id.* Clearly, the *LeClerc* panel decision is binding on this issue. The defendant is not prohibiting a right permitted by the federal government; rather the defendant is regulating one aspect of an alien's privileges. Therefore, the reasoning in *Toll* can be applied here to come to a different conclusion - namely the policy in question must plainly show direct discrimination against individuals, such as

contradicting an existing federal law in order for there to be a cause to deem the policy unconstitutional. *See id.*

On the other hand *Toll*'s rationale could also be reasonably interpreted to find a Supremacy Clause violation. If a legal alien like Plaintiff is admitted into our country with authority to work under our national immigration laws, a state policy that pre-conditions employment upon the legal alien's receipt of a higher immigration status, Permanent Resident Status, imposes more than federal laws and regulations, relative to eligibility for employment. Requiring such an alien to have the proper professional qualifications, training, etc. would not offend federal law. In that regards, Plaintiff's professional qualifications are not in question, only her immigration status impedes state licensure.

**Claim IV - Right to Travel**

Plaintiff claims that as a fundamental constitutional right, the right to travel is protected under both the due process clause and the Equal Protection clause. Plaintiff stipulates that "...Under the due process clause, the compelling state interest test will be applied if the classification penalizes a person who exercises her right of interstate migration. Under the Equal Protection clause, the law must burden a fundamental right in order to apply the compelling state interest test." (See Plaintiff's Complaint at Page 8).

Plaintiff claims a violation of the right to travel because she is penalized in Louisiana since she is unable to obtain a nurse licensure in the state, even though she is licenced in Texas. Thus, if she is incapable of receiving her license in Louisiana, she is unable to work in Louisiana as a practical nurse, the profession in which she is experienced. This inability to receive a license is a penalty and as such the compelling state interest test should be applied. (See Plaintiff's Complaint at Page 8). To meet the requirements of this test, Plaintiff argues that there is no compelling state interest in preventing select individuals, those who are not United States citizens, from obtaining nurse licensures even when they are fully qualified.

As noted earlier, Plaintiff met all the requirements set forth by the state to become licensed and the only impediment is her lack of citizenship status.

Defendant first relies on *League of United Latin American Citizens v. Bresen*, 500 F.3d 523, 535 (6th Cir. 2007) where the court asserts that "[a] state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of a right." *Id.* at 535 (quoting *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986)). There, a Tennessee law restricted the issuance of drivers' licenses to citizens and lawful residents and the plaintiffs claimed such a

statute denied them equal protection and burdened aliens' right to travel. *League of United Latin American Citizens*, 500 F.3d at 535.

In addition, the court distinguished between suspect and non-suspect claim, citing that "...illegal aliens are not a suspect class, and that the subclass of aliens legally admitted on a temporary basis are not a suspect class." *Id.* at 531. (citing *Plyler v. Doe*, 457 U.S. 202, 223 (1982)). Members of a non-suspect class are only entitled to minimum protections. *Id.* at 528. Also, since permanent residents are the only group of aliens who are afforded suspect class protection, the court said that "because the instant classification does not result in discriminatory harm to members of suspect class, it is subject only to rational basis scrutiny." *Id.* at 533. The district court held that while the statute may cause inconvenience and burden those unable to receive a driver's license, the law does not deter or penalize travel. *Id.* at 535.

Next, the defendant turns to *Schumacher v. Nix*, 965 F.2d 1262 (3rd Cir. 1992). There, the Third Circuit Court of Appeals determined that rational basis review as opposed to strict scrutiny was appropriate for the plaintiff's claim that a Pennsylvania law prohibiting graduates of an unaccredited law school from sitting for the bar violated his constitutional rights. *Id.* Ultimately, the court held that even though such individuals would be unable to practice law in Pennsylvania, their

right to travel was not so greatly impeded to trigger strict scrutiny for review. *Id.*

Under the Constitution, freedom to travel is a protected right which includes the ability to leave one State and enter another. *See Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 901-2 (1986). The Supreme Court has identified three elements of the right to travel: "It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens in that State." *See Saenz v. Roe*, 526 U.S. 489, 500 (1999). A state law violates the right to travel when "...it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *See Att'y Gen. of N.Y.*, 476 U.S. at 903.

Even though the plaintiff does not belong to a suspect class, *LeClerc*, that does not automatically rule out the possibility of strict scrutiny. *Id.* at 534. A classification warrants strict scrutiny if it burdens the exercise of a fundamental right. *Id.* However, even assuming temporary aliens' rights to travel are equal to that of citizens, the issue of whether LSA-R.S.37:970 violates that right remains. *See id.*

In *League of United Latin American Citizens*, when determining whether a Tennessee statute that limited the rights of aliens of obtaining a driver's license or identification card was constitutional, the court made a careful distinction between whether the policy caused "inconvenience" or "deterrence." *Id.* at 535. In order to violate one's right to travel, a particular statute must result in more than simply inconvenience for a claimant; the statute must definitively deter travel to and from the State. *Id.* There, the Court held that the statute's limits on aliens rights was negligible and the statute did not intend to deny anyone's right to travel through the several States. *Id.*

Similar to *League of United Latin American Citizens*, where the statute did not prevent individuals from entering the State or was its purpose that of blatant deterrence, here the statute did not impede any individual from entering or exiting the State of Louisiana. *Id.* at 534-35. Granted, in the instant case, the statute might cause the plaintiff more inconvenience than claimants in *League of United Latin American Citizens* experienced, but neither statute denied anyone's right to travel interstate. *See id.* Plaintiff may experience a long delay in being able to practice her profession in this state, but she is not barred from entering or leaving Louisiana. Moreover, there is no record evidence that the statute was implemented as an attempt to prevent travel. The statute's purpose was one of regulating the issuance

of nurse licenses; not for the intention to bar individuals from traveling locally. Thus, the reasoning in *League of United Latin American Citizens* -namely that simple inconvenience is not a persuasive reason to deem a statute as one that unconstitutionally bars one's right to travel -applies here. *See id.*

Plaintiff may turn to the Court's decision in *Saenz*, to support her argument that the statute does discriminate against her and restrict her right to travel. There, the Court held that a California statute that limited the maximum welfare benefits to welfare residents who resided in the State for at least twelve months violated their right to travel. The Court examined each of the three elements of the right to travel in turn.

For the first component of the right to travel, the Court looked at whether the statute impeded an individual's right to enter and leave the state. In *Saenz*, the court concluded that the statute posed no barrier to enter the State of California and did not attempt to prevent or deter individuals from ingress or egress. Therefore, the statute did not violate the first element. Next, the Court in *Saenz* examined whether the statute prevented individuals from obtaining the "Privileges and Immunities of Citizens in the several States." *Id.* at 501. There, the Clause "does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Id.* at 502. The

Court further concludes that "Permissible justifications for discrimination between residents and nonresidents are simply inapplicable to a nonresident's exercise of the right to move into another State and become a resident of that State." *Id.* at 502.

The Court tackled the third and most crucial issue in this case – the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same State – by concluding that the statute did in fact discriminate against a select group of citizens because they have resided in the State for less than a year. *Id.* at 504. The Court stated that "...It is undisputed that respondents and the members of the class that they represent are citizens of California and that their need for welfare benefits is unrelated to the length of time that they have resided in California." *Id.* at 505.

Plaintiff arguably likens her situation to that of the claimants in *Saenz*, alleging that her privileges are similarly restricted and she is unable to enjoy as many benefits as her permanent resident counterparts. This argument however fails.[4] The California statute in *Saenz* restricted an individual's ability to enter and leave a state by denying certain benefits to those who recently enter the State, benefits that should be provided to all

---

[4]While the Court in *Saenz* did concern United States citizens rather than temporary aliens, that issue is irrelevant. As discussed *supra*, if a policy violates a fundamental right, sometimes the issue of citizenship can be overlooked.

who reside in that jurisdiction. *See id.* Individuals would have to remain in one location for at least a year to be bestowed with all privileges awarded to others; this restriction can be viewed as preventing free interstate travel. *See id.* In the instant case, there is no such restriction on traveling interstate. Plaintiff is not forced to stay in-state for a minimum time frame nor does she obtain certain benefits by remaining in Louisiana for an extended period of time.

In sum, plaintiff has not demonstrated that the statute was created for the purpose of deterring travel nor demonstrated that the statute poses little more than an inconvenience to her. Plaintiff remains free to enter and leave the State as she desires. The statute does not meet the qualifications as "deterring travel" to such an extent to be deemed unconstitutional.

**Claim V - Dormant Commerce Clause**

Plaintiff states that Section 2 of the statute discriminates in favor of Louisiana citizens, in direct violation of the Dormant Commerce Clause. U.S. Const. Art. I. § 8, cl. 3.

Under U.S.C.A. Const. Art. 1, § 8, cl.:

> In determining whether a state law violates the dormant Commerce Clause, the court first inquires as to whether the state law discriminates against interstate commerce and unless discrimination is demonstrably justified by a factor unrelated to economic protectionism, a discriminatory law is virtually per se invalid; if there is no discrimination, a court will consider on the second tier whether the state laws

28

> unjustifiably burden the interstate flow of articles of
> commerce.

U.S.C.A. Const. Art. 1, § 8, cl.

The Court in *Brown v. Hovatter,* 561 F.3d 357 (4th Cir. 2009), analyzed whether or not an Act prohibiting corporate ownership of mortician's licenses and funeral establishments and unlicensed individual ownership of funeral establishments violated the dormant Commerce Clause by examining two tiers. 561 F.3d at 359. The first tier queries whether the state law discriminates against interstate commerce. *Id.* at 363. There, if the law cannot justify the discrimination in some method unrelated to economic protectionism, a "discriminatory law is virtually per se invalid." *Id.* In this context, discrimination means, "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Int'l Truck and Engine Corp. v. Bray*, 372 F.3d 717, 725 (5th Cir, 2004.) If no discrimination exists, the Court should proceed to the second tier, which concerns whether the state law is unjustifiable in its burden on the "interstate flow of articles of commerce." *Brown*, 561 F.3d at 363. To determine if this burden is truly unjustifiable, the Pike test is applied where the challenged law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970))

In *Brown*, the Court weighed whether the Act's burden on

29

interstate commerce was "clearly excessive" and unjustifiable via putative local benefits to determine the Act held such an incidental burden on commerce justified by the protection of public health, safety, and welfare that it was constitutional. *Id.* at 367-68. The Court determined there was a rational basis to restrict ownership of such establishments, one basis constituting the protection of the general population. *Id.* at 367. The Court further emphasized its position that the Act did not violate the dormant Commerce Clause by stating "...the Maryland Morticians Act is not aimed at any interstate flow of goods, materials, or articles of commerce. The Morticians Act is a local regulation of a localized profession where services are performed for clients entirely in Maryland." *Id.* at 366.

Like *Brown*, where the Act did not regulate the flow of goods into the state and there was arguably a rational basis behind its implementation, the Louisiana Statute is a localized law aimed at protecting residents and is not attempting to inhibit the flow of articles of commerce. *See Id.* at 367. Thus, the reasoning in *Brown* - specifically where the Act held such a minute effect of the flow of commerce and where its intention is one of localized protection that was constitutional - applies here. *See id.* at 367-68; *LeClerc, supra* (state rule's purpose to protect local problems and protect persons seeking professional assistance.)

In *Int'l Truck and Engine Corp. v. Bray*, the court held that

an Act which forbid motor vehicle manufacturers from owning, operating, controlling, or acting as dealers of motor vehicles, did not discriminate between in-state and out-of-state interests that were similarly situated. 372 F.3d at 725. The Court also noted that they "...found nothing in the legislative history to suggest that the Texas Legislature intended to discriminate between similarly situated interests" nor did they find any evidence of a discriminatory effect.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment and for Permanent Injunction (Rec. Doc. No. 18) is **DENIED;** Defendant's Motion for Summary Judgment (Rec. Doc. No. 24) is **GRANTED;** Defendant's Motion to Dismiss (Rec. Doc. No. 17) is **DISMISSED** as moot; Plaintiff's Motion to Strike Defendant's opposition to Plaintiff's Motion for Summary Judgment and Defendant's replacement statement of contested material facts in opposition to plaintiff's Motion (Rec. Doc. No. 31) is **DENIED**.

New Orleans, Louisiana this 30th day of August, 2010.

_____

UNITED STATES DISTRICT JUDGE